UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
STATE NATIONAL INSURANCE COMPANY,            Civil Case No.: _____

                    Plaintiff,            **COMPLAINT FOR**
                                                                                       **DECLARATORY**
        v.                                     **JUDGMENT WITH**
                                                                                        **JURY DEMAND**

MT. HAWLEY INSURANCE COMPANY,

                    Defendant.
------------------------------------------------------------------------x

Plaintiff, STATE NATIONAL INSURANCE COMPANY ("SNIC"), by and through its attorneys, STEWART SMITH, alleges the following as its Complaint for Declaratory Judgment against defendant MT. HAWLEY INSURANCE COMPANY ("Mt. Hawley"):

## NATURE OF THE ACTION

1. This is an action for declaratory relief and contribution arising from the breach of Mt. Hawley's obligations to provide additional insured coverage and indemnification under an excess liability insurance policy that was issued to non-party TriTech Electrical & Data, Inc. ("TriTech"), in connection with a construction site accident involving a TriTech employee, non-party Manuel Coloma, and his subsequent lawsuit.

2. TriTech was a subcontractor that contracted to perform certain construction work at a project located at 875 Washington Street, 3rd & 5th Floors, in New York, New York (the "Project").

3. In its subcontract with non-party Tri Star Construction Corp. ("Tri Star"), TriTech agreed to provide primary and non-contributory additional insured coverage for Tri Star, which was subsequently sued by TriTech's employee, Manuel Coloma, who was allegedly injured while working at the Project.

4. Specifically, the subcontract requires that TriTech provide minimum liability limits of $2 million each occurrence, and $4 million aggregate.

5. The subcontract also expressly provides that such required minimum liability limits "*can be satisfied by combining General Liability and Excess* as long as the excess follow[s] form to all coverages required by the General Liability" in Sections 2.1, 2.2, 2.3 and 2.4 of the subcontract.

6. Thus, the subcontract *expressly requires that TriTech provide excess insurance coverage*, to the extent that TriTech's General Liability coverage does not *solely satisfy* the subcontract's required minimum liability limits.

7. Non-Party James River Insurance Company ("James River") issued a commercial general liability policy to TriTech (the "James River CGL Policy"), which was in effect on July 15, 2020, the date of Mr. Coloma's alleged injury.

8. The liability limits for the James River CGL Policy are $1 million each occurrence, and $2 million aggregate – liability limits that did not *solely satisfy* the subcontract's required $2 million each occurrence/$4 million aggregate minimum liability limits.

9. Thus, because the James River CGL Policy did not meet the subcontract's minimum liability limits, the subcontract *expressly requires that TriTech provide excess liability coverage* in the amount of $1 million per occurrence and $2 million aggregate, *combining to meet the required liability limits* of $2 million each occurrence/$4 million aggregate.

10. Mt. Hawley issued an excess liability policy to TriTech (the "Mt. Hawley Excess Policy"), which was also in effect on July 15, 2020, the date of Mr. Coloma's alleged injury.

11. The liability limits for the Mt. Hawley Excess Policy are $5 million each occurrence, and $5 million aggregate.

12. Because the James River CGL Policy's liability limits did not *solely satisfy* the subcontract's required liability limits, *the required limits are satisfied by combining* TriTech's $1 million each occurrence and $2 million aggregate General Liability insurance coverage under the James River CGL Policy, with $1 million each occurrence and $2 million aggregate under its Mt. Hawley Excess Liability coverage.

13. Mr. Coloma's lawsuit was tendered to James River on behalf of Tri Star, and separately on behalf of the other two defendants sued by Mr. Coloma – Soho Work 875 Washington, LLC ("Soho") and 875 Washington Street Owner LLC ("875 Washington").

14. James River has conceded that Tri Star qualifies as an additional insured under the James River CGL Policy, and that the Tri Star-TriTech subcontract requires TriTech to "defend, indemnify and hold harmless Tri Star from and against any and all liability or claimed liability for bodily injury to any person arising out of or resulting from the Work covered by" the subcontract.

15. Therefore, James River accepted the defense and indemnity obligations of Tri Star in Mr. Coloma's lawsuit unconditionally and without reservation, and it has been defending Tri Star as an additional insured in Mr. Coloma's lawsuit, subject only to the policy limits of the James River CGL Policy.

16. James River has also conceded that Soho and 875 Washington each qualify as additional insureds, on a primary and non-contributory basis.

17. Therefore, James River has likewise accepted the tender for additional insured coverage for Soho and 875 Washington under the James River CGL Policy, and it has been defending Soho and 875 Washington as additional insureds in Mr. Coloma's lawsuit.

18. Mr. Coloma's lawsuit was also tendered to Mt. Hawley, on behalf of Tri Star, and separately on behalf of Soho and 875 Washington.

19. By letter dated May 28, 2021, Mt. Hawley denied Tri Star's tender for additional insured coverage, citing a handful of irrelevant conditions and exclusions, but it nonetheless stated that its investigation was "incomplete"; it requested TriTech's "full cooperation" and response to its requests for documentation; and it stated that it was "continuing [its] investigation."

20. Five months later, by letter dated October 28, 2021, Mt. Hawley reiterated its tender denial, by simply referring back to the May 28, 2021 tender denial letter.

21. Recently, Mt. Hawley again reiterated its tender denial to Tri Star, notwithstanding being provided with additional information and testimony from the tendered lawsuit, by simply – but incorrectly – stating its belief that the Tri Star-TriTech subcontract did not require TriTech to provide excess liability coverage.

22. Mt. Hawley likewise disclaimed coverage for Soho and 875 Washington, with respect to Mr. Coloma's lawsuit.

23. Mt. Hawley is obligated to provide additional insured coverage to Tri Star, Soho and 875 Washington (together, the "*Coloma* Defendants"), at a minimum of $1 million each occurrence and $2 million aggregate, but it has breached its Excess Policy, it has failed to acknowledge that the *Coloma* Defendants qualify as additional insureds with respect to Mr. Coloma's lawsuit, and it has failed to acknowledge that it will follow form to the James River CGL Policy after its applicable policy limits have been exhausted.

24. SNIC issued a commercial general liability insurance policy to its named insured, Tri Star, which provides excess coverage above the required coverage for Tri Star's subcontractor, *i.e.* SNIC's liability coverage for Tri Star is excess to the required TriTech liability limits of $2 million each occurrence and $4 million aggregate provided by combining TriTech's James River CGL Policy's limits and part of its Mt. Hawley Excess Policy's limits.

25. Because Tri Star was obligated to provide additional insured coverage for Soho and 875 Washington, with respect to operations performed by or on behalf of Tri Star, SNIC is obligated to provide additional insured coverage for Soho and 875 Washington, under the SNIC policy's Blanket Additional Insured coverage.

26. However, SNIC's obligation to provide additional insured coverage for Soho and 875 Washington is likewise excess to the required TriTech liability limits of $2 million each occurrence and $4 million aggregate provided by combining TriTech's James River CGL Policy's limits and part of its Mt. Hawley Excess Policy's limits.

27. A mediation is scheduled to be held in the *Coloma* lawsuit on May 30, 2025, and therefore, the coverage issues addressed herein constitute a live case and controversy, because they will impact the parties' ability to resolve that lawsuit.

28. SNIC is entitled to a judgment declaring (1) that the Tri Star, Soho and 875 Washington each qualify as additional insureds under the Mt. Hawley Excess Policy; and (2) requiring that Mt. Hawley pay any verdict, judgment or settlement in the *Coloma* lawsuit on behalf of Tri Star, Soho and 875 Washington, on a primary and non-contributory basis, immediately after exhaustion of the James River CGL Policy's $1 million per occurrence limit of liability.

## THE PARTIES

29. Plaintiff, SNIC, is and at all pertinent times was a foreign business corporation, duly organized under the laws of the State of Texas, with its principal place of business located at 1900 L Don Dodson Drive, Bedford, Texas 76021. SNIC is authorized to conduct, and does conduct, business in New York. SNIC issued a CGL policy to Tri Star in New York.

30. Defendant, Mt. Hawley, is and at all pertinent times was a foreign business corporation, duly organized under the laws of the State of Illinois, with its principal place of

5

business located in Peoria, Illinois.  Mt. Hawley is a surplus lines insurer duly operating on a non-admitted basis in New York.  Mt. Hawley issued excess liability insurance policy to TriTech in New York.

## JURISDICTION AND VENUE

31. Subject matter jurisdiction is based upon 28 U.S.C.A. § 1332 and 28 U.S.C.A. § 2201, because the action involves citizens of different states and the amount in controversy exceeds the sum of $75,000.  An actual controversy exists between the parties regarding their respective rights and obligations under the relevant insurance policies.

32. Personal jurisdiction over Mt. Hawley is proper, in that it transacts and/or conducts insurance business in the State of New York.

33. Venue is proper under 28 U.S.C.A. § 1391, because the accident alleged in the *Coloma* lawsuit giving rise to the instant insurance coverage lawsuit took place within this district, and the *Coloma* lawsuit is being litigated in this district, in the Supreme Court of the State of New York, in New York County.

## THE *COLOMA* LAWSUIT

34. SNIC seeks a declaratory judgment concerning Mt. Hawley's coverage obligations with respect to Mr. Coloma's lawsuit, captioned *Manuel Coloma v. 875 Washington Street Owner LLC, et al.*, filed at Index No. 158824/2020, in the Supreme Court of the State of New York in New York County (the "Lawsuit").  *See Coloma* Amended Verified Complaint (the "Complaint") (true and correct copy attached as **Exhibit A**).

35. The Complaint in the Lawsuit alleges that Tri Star was a general contractor for certain construction and/or renovation at the Project.  *See* **Exhibit A** (Complaint), ¶ 28.

6

36. The Complaint in the Lawsuit also alleges that on July 15, 2020, Plaintiff was a TriTech employee, working as an electrician, at the time of his alleged injury. *See* **Exhibit A** (Complaint), ¶¶ 74-76.

37. The Complaint in the Lawsuit also alleges that Plaintiff was injured on July 15, 2020, when he was working on a ladder and was caused to fall from that ladder, due to the defendants' negligence. *See* **Exhibit A** (Complaint), ¶¶ 77-78.

38. The Complaint in the Lawsuit alleges, *inter alia*, that the *Coloma* Defendants failed to supply Plaintiff with a reasonably safe, proper, suitable and fit ladder that was in good condition; failed to properly place the ladder; failed to secure the ladder; and failed to insure that the ladder remained stable and erect while Plaintiff was working on it.

39. At his deposition, Mr. Coloma testified that TriTech's fifth floor foreman directed him to use the two TriTech ladders on the Project's fifth floor job site. *See* Manuel Coloma EBT Transcript ("Coloma EBT Tr.") (true and correct copy of pertinent pages attached as **Exhibit B**), at 51:9-24; 52:4-6.

40. Mr. Coloma further testified that the TriTech ladders used by him and his nephew on July 15, 2020 were both "bad," "old," "rusty," and "loosened." *See* **Exhibit B** (Coloma EBT Tr.), at 50:12-17; 52:4-6; 54:8-14, 25; 55:2-6.

41. Mr. Coloma testified that on July 15, 2020, about an hour before his alleged injury, he complained twice to TriTech's fifth floor foreman about the "loose" TriTech ladder that "was not in good condition." *See* **Exhibit B** (Coloma EBT Tr.), at 55:14-22; 57:19-25; 58:2-8; 145:3-9.

42. Mr. Coloma testified that the TriTech foreman responded that Plaintiff "had to do it" because it was his job. *See* **Exhibit B** (Coloma EBT Tr.), at 55:14-25.

43.     Mr. Coloma further testified that no one held the ladder as he ascended it, because his nephew was inside of the ceiling for the assigned ceiling work. *See* **Exhibit B** (Coloma EBT Tr.), at 56:2-25; 57:2-6, 19-22.

44.     Mr. Coloma testified that he continued ascending his ladder, even after the ladder "was already moving" and "wobbling a little" by the time that he had reached the third step of his "loose," "old" TriTech ladder. *See* **Exhibit B** (Coloma EBT Tr.), at 55:7-13; 103:17-25; 104:2-17.

45.     Mr. Coloma conceded at his deposition that he did not ask the fifth floor TriTech foreman for help to set up the ladder or to hold the ladder. *See* **Exhibit B** (Coloma EBT Tr.), at 99:12-25; 100:2-4.

46.     Mr. Coloma also conceded at his deposition that he did not check the ladder to see if it wobbled. *See* **Exhibit B** (Coloma EBT Tr.), at 103:12-16.

47.     Hence, the allegations in the Complaint in the Lawsuit, and Mr. Coloma's testimony, establishes that his injuries were caused, in whole or in part, by TriTech's work on the Project.

## THE SUBCONTRACT AGREEMENT

48.     Prior to Mr. Coloma's alleged accident, on or about December 10, 2019, Tri Star and Tri-Tech executed a purchase order for TriTech to perform electrical work at the Project (the "Agreement"). *See* Agreement (true and correct copy attached as **Exhibit C**).

49.     As part of the Agreement, also on or about December 10, 2019, Tri Star and TriTech executed a Subcontract Agreement Rider to the Agreement (the "Insurance Rider"). *See* **Exhibit C** (Agreement), at 3-4.

50. Under the Agreement, TriTech was required to "maintain at [its] sole expense … Comprehensive General Liability Insurance ("CGL") Products/Completed Operations with limits of liability of not less than" $1 million each occurrence and $1 million aggregate." *See* **Exhibit C** (Agreement), ¶ 5(a).

51. The Agreement also requires that TriTech "shall name the project Owners and [Tri Star] as additional insureds" and that "[s]uch coverage shall be primary to any coverage carried by owner and [Tri Star]." *See* **Exhibit C** (Agreement), at 2, ¶ 5(a).

52. The Insurance Rider provides that its terms and conditions "shall supersede and govern any inconsistent term found in other parts of the written agreement and other riders between the parties." *See* **Exhibit C** (Agreement), at 3, Preamble.

53. The superseding Insurance Rider requires that the insurance obtained by TriTech "shall include contractual liability and additional insured coverage for the benefit of [Tri Star], Owner and anyone else the Owner is required to name (as set forth in the schedule below)." *See* **Exhibit C** (Agreement), at 3, ¶ 2.1.

54. The superseding Insurance Rider also requires that the insurance required to be carried by TriTech "shall be PRIMARY AND NON-CONTRIBUTORY," and that for each type of insurance specified in the Insurance Rider, "[Tri Star] and Owner's insurances shall be excess to [TriTech's] insurance. *See* **Exhibit C** (Agreement), at 3, ¶ 2.1.

55. The Insurance Rider requires that TriTech provide additional insured coverage for Tri Star, Soho and 875 Washington.

56. Notably, the superseding Insurance Rider requires that TriTech maintain CGL coverage "with ***minimum limits of $2,000,000 each occurrence, $4,000,000 aggregate***," specifically providing that "***[l]imits can be satisfied by combining General Liability and Excess***

9

*as long as the excess follow[s] form to all coverages required by the General Liability in Section[s] 2.1, 2.2, 2.3 and 2.4 of this agreement.*" *See* **Exhibit C** (Agreement), at 4, ¶ 2.4(a) (emphasis added).

57. Thus, because the superseding Insurance Rider requires CGL insurance coverage in the amount of $2 million each occurrence and $4 million aggregate, which can be satisfied by combining CGL and Excess insurance policy limits, and because TriTech's James River CGL policy's limits are $1 million each occurrence and $2 million aggregate, *the Agreement likewise requires that TriTech provide Excess insurance coverage in the minimum amount of $1 million each occurrence and $2 million aggregate*.

58. At all pertinent times, it was TriTech's and Tri Star's intention that Tri Star and the Owner would be named as an additional insured under combined CGL and Excess insurance coverage in the amount of $2 million each occurrence and $4 million aggregate issued to TriTech; that such additional insured coverage would be primary and non-contributory to Tri Star's and Owner's insurance; and that Tri Star's own insurance would be excess to TriTech's insurance.

59. The superseding Insurance Rider also contains an Indemnity provision, requiring TriTech to defend, indemnify, and hold harmless Tri Star, Owner, and all entities that Tri Star is required to indemnify and hold harmless, "from and against all liability or claimed liability for bodily injury …, including all attorney fees, disbursements and related costs, arising out of or resulting from the Work covered by this Contract Agreement to the extent such Work was performed by or contracted through [TriTech] or by anyone for whose acts [TriTech] may be held liable, excluding only the sole and exclusive negligence of the Indemnified Parties." *See* **Exhibit C** (Agreement), at 3, ¶ 1.

10

60.     Because the claimed liability in the Lawsuit arose out of TriTech's Work for Tri Star, TriTech is required to defend, indemnify and hold harmless Tri Star, Owner, and all entities that Tri Star is required to indemnify and hold harmless.  *See* **Exhibit C** (Agreement), at 3, ¶ 1.

## THE INSURANCE POLICIES

### The James River CGL Policy

61.     James River issued CGL insurance policy number 00076620-3 to TriTech, for the policy period from March 28, 2020 to March 28, 2021 (the "James River CGL Policy").  *See* TriTech Certificate of Liability Insurance ("COI") (true and correct copy attached as **Exhibit D**).

62.     The James River CGL Policy has limits of insurance in the amount of $1 million per occurrence, and $2 million general aggregate.  *See* **Exhibit D** (TriTech COI).

63.     By letter dated October 26, 2021, James River accepted unconditionally and without reservation, the defense and indemnity of Tri Star, and it has been defending Tri Star in the Lawsuit as an additional insured, on a primary and non-contributory basis, subject only to the policy limits of the James River CGL Policy.  *See* Tender Acceptance letter dated October 26, 2021 (true and correct copy attached as **Exhibit E**).

64.     By separate letter dated December 17, 2023, James River accepted the tender on behalf of Soho and 875 Washington, and it agreed to defend Soho and 875 Washington in the Lawsuit, under a reservation of rights.  *See* Tender Acceptance letter dated December 17, 2023 (true and correct copy attached as **Exhibit F**).

65.     As noted above, TriTech agreed in writing in a written agreement that would provide liability coverage in the amount of ***$2 million each occurrence*** and ***$4 million aggregate***, for Tri Star, Soho and 875 Washington as additional insureds on a primary and non-contributory basis.

66. Therefore, Tri Star Soho and 875 Washington are each "insureds" on TriTech's CGL Policy in connection with TriTech's employee's, Manuel Coloma's, alleged injury.

### The Mt. Hawley Excess Policy

67. Mt. Hawley issued excess liability insurance policy number MXL0426832-01 to TriTech for the policy period from March 28, 2020 to March 28, 2021 (the "Mt. Hawley Excess Policy"). *See* **Exhibit D** (TriTech COI).

68. The Mt. Hawley Excess Policy was also in force and effect on July 15, 2020, the accident date alleged in the Lawsuit.

69. The Mt. Hawley Excess Policy has limits of insurance in the amount of $5 million per occurrence, and $5 million aggregate. *See* **Exhibit D** (TriTech COI).

70. By letter dated May 28, 2021, Mt. Hawley denied Tri Star's tender for additional insured coverage, but it nonetheless stated that its investigation was "incomplete"; it requested TriTech's "full cooperation" and response to its requests for documentation; and it stated that it was "continuing [its] investigation." *See* Letter dated May 28, 2021, from Mt. Hawley to TriTech (true and correct copy attached as **Exhibit G**).

71. None of the conditions and exclusions that Mt. Hawley mentioned in its May 28, 2021 denial letter applies to the Lawsuit or Mr. Coloma's alleged injury.

72. Importantly, however, Mt. Hawley conceded in its May 28, 2021 letter that ***its "Excess Policy,*** except where provisions to the contrary appear herein, ***is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects***, including changes by endorsement." *See* **Exhibit G** (May 28, 2021 Mt. Hawley letter), at 2.

73. As noted above, James River is defending Tri Star, Soho and 875 Washington in the Lawsuit, as additional insureds under Mt. Hawley's underlying insurance – the James River CGL Policy – and for that reason, Tri Star, Soho and 875 Washington each qualify as additional insureds under the Mt. Hawley Excess Policy. *See* **Exhibits E & F**.

74. Five months later, by letter dated October 28, 2021, Mt. Hawley reiterated its tender denial, by simply referring back to the May 28, 2021 tender denial letter. *See* Letter dated October 28, 2021, from Mt. Hawley to TriTech (true and correct copy attached as **Exhibit H**).

75. Recently, Mt. Hawley again reiterated its tender denial to Tri Star, notwithstanding being provided with additional information and testimony from the tendered lawsuit, by simply – but incorrectly – stating its belief that the Tri Star-TriTech subcontract did not require TriTech to provide excess liability coverage. *See* Email dated August 1, 2024, from Carol Quirk (Mt. Hawley) to Carol Lee Chevalier, Esquire (Tri Star defense counsel) (true and correct copy attached as **Exhibit I**).

76. For the reasons described above, however, the Tri Star-TriTech subcontract requires TriTech to provide excess liability coverage in a minimum amount of $1 million per occurrence and $2 million aggregate.

77. By letter dated March 13, 2024, Mt. Hawley likewise disclaimed additional insured and indemnity coverage for Soho and 875 Washington. *See* Letter dated March 13, 2024, from Mt. Hawley to Steven Adams (true and correct copy attached as **Exhibit J**).

78. Mt. Hawley is obligated to provide additional insured coverage to Tri Star, Soho and 875 Washington – at a minimum liability limit of $1 million each occurrence and $2 million aggregate, but it has breached its Excess Policy, it has failed to acknowledge that Tri Star, Soho and 875 Washington each qualifies as an additional insured with respect to the Lawsuit, and it has

13

failed to acknowledge that it will provide additional insured indemnity coverage to Tri Star, Soho and 875 Washington, on a primary and non-contributory basis, immediately upon exhaustion of the James River policy's $1 million per occurrence limit.

79. Because Tri Star, Soho and 875 Washington are additional insureds under the underlying James River CGL Policy in connection with the Lawsuit, they are each also additional insureds under the Mt. Hawley Excess Policy.

80. SNIC issued CGL policy number PSI 1900212 to Tri Star, for the policy period from October 20, 2019 to October 20, 2020 (the "SNIC Policy").

81. The SNIC Policy provides excess coverage above the required coverage for Tri Star's subcontractor, TriTech. In other words, SNIC's liability coverage for Tri Star (and its additional insured coverage for Soho and 875 Washington) is excess to the required TriTech liability limits of $2 million each occurrence and $4 million aggregate provided by combining TriTech's James River CGL Policy's limits and its Mt. Hawley Excess Policy's limits.

82. SNIC is entitled to a judgment declaring (1) that Tri Star, Soho and 875 Washington each qualifies as an additional insured under the Mt. Hawley Excess Policy; and (2) requiring that Mt. Hawley pay any verdict, judgment or settlement in the Lawsuit on behalf of Tri Star, Soho and 875 Washington, up to a minimum of $1 million, on a primary and non-contributory basis, immediately after exhaustion of the James River CGL Policy's $1 million per occurrence limit of liability.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Declaratory Judgment – Tri Star, Soho and 875 Washington are Additional Insureds Under the Mt. Hawley Excess Policy for the Lawsuit)**

83. SNIC repeats and realleges each and every allegation made in paragraphs designated "1" through "82" inclusive, with the same force and effect as if set forth herein.

84. Tri Star, Soho and 875 Washington each qualifies as an additional insured under the James River CGL Policy, as James River has conceded, by providing such coverage for Tri Star, Soho and 875 Washington.

85. The allegations in the *Coloma* Lawsuit against Tri Star, Soho and 875 Washington are covered within the terms of the James River CGL Policy, as James River has conceded, by providing such coverage for Tri Star, Soho and 875 Washington.

86. Mt. Hawley has conceded that ***its "Excess Policy,*** except where provisions to the contrary appear herein, ***is subject to all of the conditions, agreements, exclusions, and limitations of and shall follow the underlying insurance in all respects***, including changes by endorsement." *See* **Exhibit H** (May 28, 2021 Mt. Hawley letter), at 2.

87. Pursuant to the terms of the Mt. Hawley Excess Policy, and as Mt. Hawley has implicitly conceded, Mt. Hawley has an obligation to provide additional insured indemnity coverage for Tri Star, Soho and 875 Washington in the Lawsuit, in the minimum amount of $1 million per occurrence, immediately after exhaustion of the James River CGL Policy's $1 million per occurrence limit of liability.

88. Pursuant to the terms of the Mt. Hawley Excess Policy, Mt. Hawley also has a separate obligation to provide indemnity coverage for Tri Star, Soho and 875 Washington in the Lawsuit, immediately after the exhaustion of the James River CGL Policy's $1 million per occurrence limit of liability, because TriTech assumed the tort liability of Tri Star, Soho and 875 Washington in its subcontract with Tri Star, which is an "insured contract."

89. Because SNIC's obligation to provide coverage for Tri Star, Soho and 875 Washington is excess to the required TriTech liability limits of $2 million each occurrence and $4 million aggregate provided by combining TriTech's James River CGL Policy's limits and part of

15

its Mt. Hawley Excess Policy's limits, SNIC is entitled to a judgment declaring that Tri Star, Soho and 875 Washington each qualifies as an additional insured under the Mt. Hawley Excess Policy.

90. Based on the foregoing, SNIC respectfully requests a judgment declaring that Tri Star, Soho and 875 Washington each qualifies as an additional insured under the Mt. Hawley Excess Policy.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Declaratory Judgment – Duty to Indemnify for the Lawsuit)**

91. SNIC repeats and realleges each and every allegation made in paragraphs designated "1" through "90" inclusive, with the same force and effect as if set forth herein.

92. Pursuant to the terms of the Mt. Hawley Excess Policy, and under the application of New York law, Mt. Hawley has an obligation to indemnify Tri Star, Soho and 875 Washington in the Lawsuit, on a primary and non-contributory basis, as an additional insured under the Mt. Hawley Excess Policy, immediately after the exhaustion of the James River CGL Policy's $1 million per occurrence limit of liability.

93. Pursuant to the terms of the Mt. Hawley Excess Policy, and under the application of New York law, Mt. Hawley also has a separate obligation to indemnify Tri Star, Soho and 875 Washington in the Lawsuit because TriTech assumed the tort liability of Tri Star, Soho and 875 Washington in its subcontract with Tri Star, which is an "insured contract."

94. Mt. Hawley has failed to acknowledge in writing that it owes a duty to indemnify Tri Star, Soho and 875 Washington, in the Lawsuit, immediately after the exhaustion of the James River CGL Policy's $1 million per occurrence limit of liability.

95. Based on the foregoing, SNIC respectfully requests a judgment declaring that Mt. Hawley has an obligation to indemnify Tri Star, Soho and 875 Washington in the Lawsuit, on a primary and non-contributory basis, as an additional insured under the Mt. Hawley Excess Policy,

in the minimum amount of $1 million per occurrence, immediately after the exhaustion of the James River CGL Policy's $1 million per occurrence limit of liability, and requiring that Mt. Hawley pay any verdict, judgment or settlement in the Lawsuit on behalf of Tri Star, Soho and 875 Washington, on a primary and non-contributory basis.

## DEMAND FOR JURY TRIAL

96.    SNIC hereby demands a trial by jury in this action for all issues triable by jury.

**WHEREFORE**, Plaintiff SNIC hereby demands judgment against Mt. Hawley, and a declaration as follows:

a. Declaring that Tri Star, Soho and 875 Washington each qualifies as an additional insured under the Mt. Hawley Excess Policy with respect to the Lawsuit; and

b. Requiring that Mt. Hawley indemnify Tri Star, Soho and 875 Washington in connection with the Lawsuit, on a primary and non-contributory basis, by paying any verdict, judgment or settlement in the Lawsuit on behalf of Tri Star Soho and 875 Washington, up to a minimum amount of $1 million per occurrence, immediately after the exhaustion of the James River CGL Policy's $1 million per occurrence limit of liability; and

c. Awarding SNIC the costs of suit incurred herein; and

d. Awarding SNIC such other and further relief as this Court deems just and proper.

(continued on following page)

Dated: March 27, 2025
       West Conshohocken, Pennsylvania

                              STEWART SMITH

                       By: _____/s/ Nancy S. Portney_____
                           Nancy S. Portney (NY Bar #5726880)
                           300 Four Falls Corporate Center, Suite 670
                           West Conshohocken, PA  19428
                           Phone: 484-344-5323
                           Fax:    484-534-9470
                           Email: nportney@StewartSmithLaw.com
                           *Attorneys for Plaintiff,*
                           *State National Insurance Company*